Shaw, C. J.
The libellant seeks to obtain a decree, annulling his marriage, on the ground that his wife, at the time of the marriage, had a husband living. He relies mainly on the statute of 1841, c. 83, which provides that “ whenever a divorce from the bond of matrimony shall be decreed for any cause allowed by law, the guilty party shall be debarred from contracting marriage during the lifetime of the innocent party; and if the guilty party shall contract such marriage, the same shall be void.”
The court are of opinion that, notwithstanding this statute, the marriage of these parties was not void, for several reasons. The title to this act is “ an act to prevent collusion in cases of divorce.” But without relying upon the title as part of the statute, it seems obvious that the disability to contract a marriage imposed on the party appearing, by the decree, to be the guilty party, is so denounced as in the nature of a punishment for a violation of conjugal duty. To apply that law to this case would be to punish a party for acts done and offences committed in another state, acts which would not be punishable, if done in this state; and for acts done before the law was passed, it being in this respect plainly ex post facto.
But upon other and broader grounds, not regarding a decree of divorce and its consequences as solely or principally in the nature of criminal proceedings, we think the result is the same. Marriage originates in a contract, and whether the contract be valid or not, depends primd facie upon the law of the place where the contract is entered into. But marriage, when lawfully contracted and valid, establishes a relation between the parties, universally recognized, in all civilized and Christian communities, from which certain rights, duties and obligations are derived; these rights and duties attach to the persons of +he parties, as husband and wife, and follow them when they change their domicil from one jurisdiction to another. Among these rights, is that of seeking the dissolution of the conjugal relation, in the manner and for the causes, allowed by the law of the place, where they have bond fide and without any sinister purpose taken up their domicil; and the tribunals of such government, acting in conformity to its laws, have jurisdiction *387 of the persons of the parties, and of the subject-matter of the complaint) which is their conjugal relation, and their duties in it; and therefore a decree of divorce there pronounced, in due course of law, must be regarded as valid to effect the dissolution of the bond of matrimony everywhere. Barber v. Root, 10 Mass. 260.
It is only necessary to apply these principles to the present case. The respondent was married to Stoddard in Rhode Island, and they lived there the whole of their married life; the supreme court of that state had jurisdiction of the persons and subject-matter, and decreed a dissolution of the bonds of matrimony. That decree is conclusive. The respondent ceased to be a married woman, ceased to have a husband living, and was in all respects a feme sole. In this character she came to Massachusetts, and took up her domicil here. The special law of Massachusetts, disabling a party under certain circumstances from marrying again, did not apply to her, and therefore there is no ground to declare her marriage with the libellant void.
We think also that the question is settled by the Rev. Sts. c. 76, §§ 39, 40, the object of which plainly was, to prevent collusive or clandestine divorces. Sect. 39 declares that when any inhabitant of this state shall go into any other state or country, to obtain a divorce for any cause occurring here, whilst the parties resided here, or for any cause which would not authorize a divorce by the law of this state, such a divorce shall be of no force or effect in this state. The object of this statute obviously was to prevent a species of abuse, which had long been practised, by obtaining divorces in other states, where the parties had no domicil, and where no cause of divorce had occurred. Hanover v. Turner, 14 Mass. 227. But this statute is confined to persons, inhabitants of this state, who go into other states for the purpose of obtaining clandestine and unauthorized divorces. This is put beyond doubt by § 40, which expressly declares, that in all other cases, a divorce decreed, in any other state or country, according to the law of the place, by a court having jurisdiction of the cause, and of both of the parties, shall be valid and effectual *388 in this state. This is manifestly one of those “ other cases,” and therefore the decree pronounced in Rhode Island effectually dissolved the marriage relation, and by force of this section that decree is valid here. Libel dismissed.