## Young v. Young.

*Witkin & Egan,* for plaintiff.

GORDON, JR., J., March 10, 1932.—This is a bill in equity by a wife against a husband to restrain him from prosecuting an action for divorce against her in the State of·Morelos, Mexico, and the case is before us upon an application for preliminary injunction. Although duly served with process and notice of this hearing, the husband defendant has not appeared in opposition to the application which is based upon these undisputed facts. The parties, who are citizens of this state, were married in Philadelphia on January 6, 1915, and have lived here continuously to the present time, the husband being engaged in the newspaper business. On December 2, 1927, the defendant deserted his wife; and on June 30, 1930, instituted an action for divorce in Court of Common Pleas No. 1, as of June Term, 1930, No. 1421, in which, notwithstanding his desertion of her, he seeks the divorce on the ground of her alleged cruelty. This action is still pending, having been prosecuted no further by the defendant than the filing of the libel and service of the subpœna. On February 10, 1932, the defendant began a proceeding for absolute divorce against his wife in Cuernavaca, State of Morelos, Mexico, and caused notice thereof to be served upon her at her residence here. In this notice it appears that the defendant has falsely represented, or caused it to be represented, to the Mexican court in which the suit has been begun, that he is a bona fide resident of the said City of Cuernavaca.

Upon these facts the plaintiff asks an injunction restraining the defendant from prosecuting the divorce proceedings in Mexico. The power of a court of equity to enjoin persons who are within its jurisdiction from prosecuting actions in foreign states is well recognized and not subject to doubt: Portarlington *v.* Soulby, 3 M. & K. 104; Home Insurance Co. *v.* Howell, 24 N. J. Eq. 238. Such relief will be granted wherever it is made to appear, *inter alia,* "that an equitable right will otherwise be denied; . . . that the party asking the injunction will be subjected to fraud and oppression unless it is granted; that the institution of the suit in another state was for the purpose of securing to plaintiff some unfair or unconscionable advantage; . . . that the forum was selected for the purpose of vexatiously harassing or oppressing defendant:" 32 C. J. 115; or "where the purpose of bringing the suit in a foreign jurisdiction is to evade the laws of one's own state, and the laws of the foreign jurisdiction are oppressively different from those of the home state:" Delaware, Lackawanna & Western R. R. Co. *v.* Ashelman et ux., 300 Pa. 291.

There does not appear to be any reported case in Pennsylvania in which an injunction has been sought to restrain the prosecution of an action for divorce in a foreign jurisdiction. The decisions of other states, however, furnish authority for such proceedings. In Kempson v. Kempson, 58 N. J. Eq. 94, 43 Atl. 97, the New Jersey Court of Chancery restrained a resident of New Jersey from prosecuting an action for divorce in the State of North Dakota. Vice Chancellor Pitney in that case pointed out the predicament in which a spouse so sued for divorce in a foreign jurisdiction is placed. He said "she must either (1) go to the trouble and expense of appearing generally in the Dakota court to resist her husband's claim, or (2) she must attempt to appear specially for the purpose of contesting the jurisdiction of the court by showing his real domicile to be in New Jersey. Either of these defences involves great labor and expense on her part. The only other course open to her is, in substance, to allow judgment by default to go against her there, and attack the decree when attempted to be enforced in this state. Now, if she adopts the first remedy and appears in that court, it will, by that appearance, have obtained jurisdiction of her person and undoubted jurisdiction of the subject-matter of the suit. . . . As to the second course, namely, a special appearance for the purpose of attacking the jurisdiction, it is common knowledge that the courts of Dakota assume jurisdiction of non-resident defendants based on a residence on the part of the plaintiff which falls far short of amounting to an actual domicile, . . . so that, if she should appear specially, the task of satisfying the court that her husband was not a bona fide domiciled resident of the state, would be well-nigh hopeless. If she takes the remaining course, and fails entirely to appear, and allows a decree to go against her, she will be in the situation of a divorced wife, who must bring a suit to set aside the decree of divorce and enforce her rights against her husband, who may avoid a personal service in this jurisdiction. This is a hardship to which it seems to me the husband has no right in equity to subject her." See, also, Felt v. Felt, 57 N. J. Eq. 101, 40 Atl. 436.

In Miller v. Miller, 66 N. J. Eq. 436, 58 Atl. 188, a wife in New Jersey was restrained from proceeding with a suit for divorce which she had instituted against her husband in South Dakota, because "there is no doubt that she went to South Dakota for the express purpose of instituting a suit to obtain a divorce."

Again, in Magowan v. Magowan, 57 N. J. Eq. 195, 322, 42 Atl. 331, a similar injunction was issued, the court declaring "that a bona fide residence in a state is a jurisdictional fact, which must necessarily exist and precede a consideration of the merits of a divorce case; that, while the determination of that question by the court assuming jurisdiction is final, not only in that state, but everywhere else, yet, when that determination had been obtained by fraud and false statements, it is without extra territorial effect, and may be treated as void in the courts of other states. It is to prevent the success of an attempt to perpetrate such a fraud that the complainant now invokes the aid of this court:" Huettinger v. Huettinger, 43 Atl. 574. See, also, Von Bernuth v. Von Bernuth, 76 N. J. Eq. 487, 73 Atl. 1049.

Probably the leading case upon this subject is Greenberg v. Greenberg, 218 App. Div. 104, 218 N. Y. Supp. 87, in which a husband, who was a resident of the State of New York, was restrained from prosecuting a suit for divorce against his wife in Mexico. In his opinion in that case, Dowling, J., after a thorough review of the authorities, considers and conclusively answers most, if not all, of the principal objections advanced against the granting of relief

of this nature. We quote from the concluding portion of that opinion: "There is no difference between a case where a citizen of this State is seeking to obtain a fraudulent divorce in another State by attempting to set up a fictitious residence therein, and one where such a citizen seeks to evade the laws of this State by voluntarily submitting himself to a foreign jurisdiction and obtaining a fraudulent decree of divorce there. The result is the same in either case—a willful defiance of the laws of this State, whose duty it is alike to protect her citizens whose rights are being attacked and sought to be destroyed, and to enjoin the citizen who is trying to effectuate the fraud in another State.

"Nor is it an answer to this application for relief to say that the decree of divorce sought to be obtained in Mexico will be invalid in this State and, therefore, plaintiff needs no injunction to prevent its issuance. . . . If he were allowed to prosecute his Mexican action to judgment, undoubtedly he would then find Mexican counsel to advise him that his divorce obtained there was valid in Mexico, and that he was free to contract a second marriage in that country. Thus plaintiff would be in danger of having her status assailed and her rights invaded by having a husband with one wife in New York and another in Mexico. . . . A wife who has given no ground for divorce in this State where she and her husband have always lived during their married life, should not be exposed to the humiliation and doubt as to her status raised by a judgment of divorce in another State, even if fraudulently obtained and invalid here.

"There are many conceivable uses to which such a judgment of divorce could be put, causing plaintiff expense, litigation, worry, annoyance and misrepresentation. It is no answer to say that she must ultimately succeed against any attack made upon her, under the judgment, as it is invalid. The true answer is, that as a citizen of this State she is entitled to the aid of its courts to prevent the commission of a threatened wrong by her husband, also a citizen of this State, by his obtaining a decree of divorce in another jurisdiction, in evasion of the laws of this State, in violation of her rights and in consummation of a patent fraud."

Notwithstanding the absence of reported precedent in this state, we have no doubt of our equitable power to issue the injunction prayed for in this case, and we are equally free from doubt that the facts fully justify our doing so. Realizing that he is not entitled to a divorce under our law, as evidenced by his practical abandonment of the divorce proceedings he has already begun here, the defendant has gone all the way to Mexico to secure a divorce there upon a ground not recognized by our law; and, in endeavoring to accomplish his purpose there, he has resorted to a false and fraudulent pretense respecting his residence. This is a clear attempt to evade the law of this Commonwealth to which he is subject. In doing so, he also is subjecting his wife to the jeopardy of a questionable marriage status, and to vexatiously harassing and oppressive litigation. Should he succeed in securing a judgment in his favor in Mexico, he would acquire an unfair and unconscionable advantage over her. She is a citizen of this Commonwealth clothed with the status of a lawful wife, and, in the full and unquestioned enjoyment of that status and of the rights incident to it, she is entitled to the protection of our laws and of our courts. We will not permit her to be forced into a foreign land to defend rights which our law secures to her as a citizen. The law of her home is adequate to protect her in such a situation.

Accordingly, we enter the following preliminary decree in the case:

And now, to wit, March 10, 1932, upon cause having been shown by bill of complaint and hearing had thereon, and upon motion of Witkin & Egan, Esqs., attorneys for the plaintiff, it is ordered, adjudged and decreed:

That a preliminary injunction issue enjoining and restraining the defendant, Walter A. Young, from:

1. Prosecuting and proceeding in the alleged action in divorce instituted by him against Anna Nash Young, in the court of first instance at Cuernavaca, State of Morelos, Mexico, or in any other court in said country.

2. Permitting or causing to be permitted by any agent, servant or employee, any act whatsoever in furtherance of the said action in divorce instituted by the defendant, Walter A. Young, in Cuernavaca, State of Morelos, Republic of Mexico.

3. Contracting any marriage with any other person upon the authority or pretended authority of any order or decree heretofore issued, or which may hereafter be issued or granted to him, in said proceedings instituted by him as aforesaid against his wife, Anna Nash Young, in the said State of Morelos, Mexico, or in any other foreign state or jurisdiction; or doing or performing any act in any foreign state or jurisdiction by which the marital status and rights of the plaintiff are or may be questioned, jeopardized, changed, altered or affected in any manner whatsoever.

This injunction to continue until further order of the court.

Security to be entered in the sum of $100.