**Bernadette BELANGER**

**v.**

**Louis BELANGER.**

Supreme Judicial Court of Maine.

April 18, 1968.

B. M. Siciliano, Dexter, for appellant.

Eaton, Peabody, Bradford & Veague, by John E. McKay, Bangor, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DU-FRESNE, and WEATHERBEE, JJ.

MARDEN, Justice.

On report.

■ Upon a complaint for divorce to which was addressed a Motion to Dis-

miss, alleging (a) lack of jurisdiction, and (b) improper venue, the presiding Justice "A" upon hearing on the Motion, denied the Motion by decree filed January 30, 1967 and held that the cause was in order for hearing on its merits. Later, upon such hearing on February 28, 1967 on the merits, Justice "B," upon motion of the party aggrieved by the denial of the Motion to Dismiss, Ordered "this action" reported under Rule 72(c) M.R.C.P. supported by the record of the testimony given at the hearing on the Motion before Justice "A."

While Rule 72(c) contemplates that the "case" is to be reported, see Maine Civil Practice § 72.6 and the pre-rule concept of "report" in Mather v. Cunningham, 107 Me. 242, 244, 78 A. 102, Justice "B" reported the "action" which, from other phrasing in the order, is meant the action of Justice "A" in denying the motion to dismiss.

This raises a question of judicial policy. In the interest of intracourt comity, without prejudice to the rights of an aggrieved party, we hold that Rule 72(c) M.R.C.P., new to our practice, is not to be interpreted as authorizing a member of the Superior Court to sponsor what is in effect an interlocutory appeal from a decision of another member of the same Court.

The situation here was open to either of two approaches. The party aggrieved by the decree of Justice "A" could have moved Justice "A" under the rule for a report of the case and if Justice "A" were of discretionary opinion that the question of jurisdiction ought to be reviewed by the Law Court, MacLean v. Jack, 160 Me. 93, 96, 198 A.2d 1, the case could have been reported and proceedings on the merits stayed. Certainly if Justice "A" upon motion to report had not considered the interlocutory report justified, practice would not have permitted the aggrieved party to file a similar motion with Justice "B." Justice "B" was presented with a case which had been adjudged as ready for trial on its merits and if, on hearing, a judgment of divorce were ordered, the party aggrieved, upon appeal, would have both jurisdiction and merits reviewed.

We are mindful that the rule is expressed in terms of "the court" and that "it" may report an interlocutory ruling, but the pre-rule statute providing, in equity, for the "report" of a case identified such "report" with the justice before whom the "reported" issue arose, see § 24, Chapter 107 R.S. 1954 and Inhabitants of Town of Lebanon et als. v. Shapleigh et als., 154 Me. 325, 147 A.2d 451. This statute was repealed (§ 86, Chapter 317 P.L.1959) coincidentally with the effective date of the Civil Rules and the merger of law and equity. At the same moment an amendment to § 15, Chapter 103 R.S. 1954 (now 4 M.R.S.A. § 57) which fixed the jurisdiction of this Court as a Law Court and theretofore authorized it to entertain "questions of law arising on reports of cases," became effective, which amendment (§ 69, Chapter 317 P.L. 1959) extended its jurisdiction on reported cases to include "interlocutory orders or ruling of such importance as to require, *in the opinion of the justice* (emphasis added), review by the law court before any further proceedings in the action." [1]

As between the statute and the rule simultaneously effective, the balance of the reconciliatory scales tips toward the statute, which speaks in terms of jurisdiction. Meager support is also lent by Rule 83 M.R.C.P. which provides that the word "court" shall include "any justice."

With this caveat, and examination of the transcribed testimony revealing that its review, if properly before us, would dispose

1. The Reporter's Notes associated with Rule 72 M.R.C.P., Maine Civil Practice, page 538, points out, without comment, that Rule 72(c) is adapted from Massachusetts General Laws, Chapter 231, § 111. The Massachusetts statute expressly provides that a justice may "report" a ruling made by "him."

of the case, we pass to the undisputed facts.

The parties were married in St. Agatha, Maine, in 1937 and lived in the Aroostook area until 1940. During the period 1940–1947 they were in Connecticut. In 1947 they returned to Presque Isle, where they remained until they lost their home by fire, which would appear to have been in November of 1950. They went to Connecticut for the winter and in the spring of 1951 came to Dexter, Maine, where they owned, or purchased at that time, a farm, which Mr. Belanger operated and Mrs. Belanger worked in a laundry. Several children had come from the union.

Some time prior to August of 1964 Mr. Belanger went to Connecticut, found work, and Mrs. Belanger and the children and their household goods joined him in August of 1964 at 750 Allen Street, New Britain. The farm was "lost," it being under foreclosure when the family went to Connecticut in the summer of 1964.

The parties separated in November of 1965, at which time Mrs. Belanger and 6 of her 9 children remained at 750 Allen Street, New Britain, Connecticut, where they continued to occupy an apartment as of the date of hearing. Mrs. Belanger began work in December 1964 at the Teachers College in New Britain, Connecticut, where she was still employed at date of hearing.

By complaint for divorce dated November 5, 1965 Mrs. Belanger alleged herself to be of New Britain, Connecticut, and her husband-defendant of 750 Allen Street, New Britain, Connecticut. Reconciliation followed.

In the present complaint for divorce dated May 6, 1966 Mrs. Belanger alleges herself to be of Dexter, Maine, and the defendant-husband of Forrestville, Connecticut.

Mrs. Belanger came to Maine on May 5, 1966, at which time she stayed with her son, signed the complaint under consideration on May 6, 1966, and returned to Connecticut on May 7, 1966. Since that time she has been in Maine for "a week, over a week" in July of 1966 and again in August for the purpose of a "hearing" at which time she remained two days.

She is receiving public aid in the State of Connecticut, she has neither motor vehicle nor voting registry in either State.

At the hearing on October 13, 1966 before Justice "A" she stated that following the hearing she was going back to her job in Connecticut. The next question was:

"Q. You don't intend to stay in Maine do you? * * *

"A. I don't say I never come back to Maine, because I come back to Maine, that is what we did all our life, back and forth and stay most of the time in Maine, in Maine its our place.

"Q. In May when you signed the divorce complaint, you didn't intend to stay here, did you?

"A. At the time I didn't, no, at the time."

This answer poses an interesting speculation as to whether the witness said: "At the time I didn't know, at the time," or as it is recorded. The bearing on the issue is, however, the same.

 Upon undisputed facts, the issue of accuracy of a ruling based upon them is one of law. Osteopathic Hospital of Maine v. Inhabitants of City of Portland, 139 Me. 24, 35, 26 A.2d 641. The denial of a motion to dismiss, submitted upon report, raises an issue of law. Smith et al. v. State of Maine, 157 Me. 355, 172 A.2d 628.

 Divorce and the power of the court to deal with it is statutory. Strater v. Strater, 159 Me. 508, 510, 196 A.2d 94.

Title 19 M.R.S.A. § 691 in pertinent part provides that:

"A divorce * * * may be decreed in the county where either party resides at the commencement of proceedings" for stated causes "provided the parties were married in this State or cohabited here after marriage, or if the plaintiff resided here when the cause of divorce accrued, or had resided here in good faith for 6 months prior to the commencement of proceedings, or if the defendant is a resident of this State."

The controversy centers in the "residence" requirement.

■ For a court to treat a given issue it must have jurisdiction of the subject matter, the *res* in contest,—here the marriage status, and the parties. 20 Am.Jur.2d Courts § 88, 24 Am.Jur.2d Divorce and Separation § 246. See Usen v. Usen, 136 Me. 480, 501, 13 A.2d 738, 128 A.L.R. 1449. The statute equates jurisdiction of the marriage status with "residence," while at the same time it prescribes "venue."

"Venue, * * *, means the place where a case is to be tried, whereas jurisdiction does not refer to the place of trial, but to the power of the court to hear and determine the case." 20 Am.Jur.2d Courts § 89.

It has been stated many times that the state, because of its policy interest in maintaining the integrity of the marriage relation, is a third party to a divorce proceeding. Dionne v. Dionne, 155 Me. 377, 378, 156 A.2d 393. Such a state-marriage relationship does not arise between the soverign and those impermanently within its boundaries. Thus "an essential element of the judicial power to grant a divorce, or jurisdiction, is domicil; and the use of the term 'residence' * * * in a divorce statute is generally deemed to import the requirement of domicil." 24 Am.Jur.2d Divorce and Separation § 246, "importing an actual permanent dwelling or abode." Id. § 247. As to domicil, Williams v. State of

North Carolina, 325 U.S. 226, 65 S.Ct. 1092, [6, 7] 1095, 89 L.Ed. 1577 (1945), Gregory v. Gregory, 76 Me. 535, 539, Id., 78 Me. 187, 189, 3 A. 280, and Usen, supra, 136 Me. at page 502, 13 A.2d 738 (dictum).

■ The word "resides," the twelfth word, in the quote from the statute means "is domiciled," that is, having "an abode animo manendi, a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." 24 Am. Jur.2d Divorce and Separation § 247. As stated in Gilmartin v. Emery, 131 Me. 236, 239, 160 A. 874, 875:

"Residence, being a visible fact, is not usually in doubt. The intention to remain is not so easily proved. Both must concur in order to establish a domicile."

■ When the parties here went to Connecticut in 1964 as a family, and with their belongings, they left no abode in Maine. Plaintiff's domicil was that of her husband. 25 Am.Jur.2d Domicil § 48, and Harding et ux. v. Alden, 9 Me. 140, 147. There is nothing to suggest that he retained a Maine domicil. The evidence is to the contrary. Upon the separation of the parties, 6 months before the complaint before us was made, plaintiff remained at the address theretofore adopted by her husband, in Connecticut, and while, if separated for cause, she was competent to establish a domicil of choice, Harding, supra, at page 147, if she did so, it was not Maine, and the burden is upon her to prove such choice. Gilmartin, supra, 131 Me. at page 242, 160 A. 874.

The fact that domicil is so dependent upon intent, cases dependent upon domicil present peculiar difficulties. As in other cases in which intent is relevant, it is supported by statement of the person whose intent is in issue and proof of other facts from which intent may properly be inferred. The factual circumstances may speak louder than the words. Here plaintiff seeks to prove domicil upon only a hope

that she can sometime return to Maine. It is not enough. See Turner v. Turner, 87 Vt. 65, 88 A. 3, 47 L.R.A.,N.S., 505 (1913), and Cyr v. Cyr, 118 Vt. 445, 111 A.2d 735, [1, 2] 736 (1955). Our Superior Court has no jurisdiction of the parties' marriage status.

Report discharged.

DUFRESNE, J., sat at argument, but did not participate in the decision.