## Inhabitants of Exeter *vs.* Inhabitants of Brighton.

Where a pauper left a town prior to *March* 21, 1821, without any intention of returning, and did not return, he gained no settlement in that town by the settlement act of that date, although he had acquired no home in any other place.

Exceptions from the Court of Common Pleas.

The action was brought for supplies furnished to one *Rogers,* alleged to have fallen into distress in *Exeter* and in need of immediate relief, and to have had his settlement at the time in *Brighton.* The question was, whether the pauper had gained a settlement in *Brighton* by dwelling and having his home there on the twenty-first of *March,* 1821.

Sometime in the autumn of 1820 the pauper was married to the daughter of one *Downes,* who then resided in *Brighton,* and continued to reside with *Downes* until *December* of that year, when *Downes* removed to *Wellington.* *Rogers* with his wife resided in *Brighton* until sometime in the month of *February,* 1821, when

they went to the house of *Downes* in *Wellington*, but whether with the intention of remaining there or not, the evidence was conflicting. After a few days he left *Wellington*, and did not return there again until *May*. The plaintiffs introduced testimony tending to show that *Rogers* was residing in *Brighton*, *March* 21, 1821, and the defendants, to show, that he with his wife were at that time residing in *Athens*.

PERHAM J., presiding at the trial, stated to the jury, that if they found by the evidence, that the pauper had his *settlement* and home at *Brighton* on the 21st of *March*, 1821, the defendant town would be liable in this action. That if they found the pauper's domicil to have been previously in *Brighton*, but that if he had left the town and was absent that day, they would inquire with what intention he left ; if for a time, for any purpose, to seek employment, or the like, with the intention of returning, he would still dwell and have his home there within the meaning of the statute, although he might not be personally in the town on that day. But if he had previously taken up his settlement and left the town, with the intention of not returning, and was absent that day, his domicil would have been discontinued, although he should not have gained any elsewhere ; and in such case, the defendant town would not be liable in this action. That if *Rogers* had gone from *Brighton* with his wife before *March* 21st, with what things he had, with an intention to seek some other place of residence, but not with an intention of returning, he could not be considered as residing in *Brighton* on that day, although he might not have become a resident in any other town.

The verdict was for the defendants, and the plaintiffs filed exceptions.

*J. Appleton*, for the plaintiffs, contended : —

1. That the jury were misled by the instruction of the Judge, in requiring them to find, that the pauper had his settlement in *Brighton*, as well as his residence, on the 21st of *March*, 1821.

2. That the Judge erred in instructing them, that if the pauper left *Brighton* before that time with no intention of returning there, his home remained there no longer, although he had acquired no new one ; and urged, that the old home remained, until a new one was gained. He cited *Jennison* v. *Hapgood*, 10 *Pick.* 98 ; *Sto-*

Exeter *v.* Brighton.

*ry's Conflict of Laws,* 47; 5 *Vesey,* 750; 4 *Cowen,* 516; 2 *Kent's Com.* 346; *Civil Code Napoleon, Tit.* 3, § 303; *Knox* v. *Waldoborough,* 3 *Greenl.* 455; *Parsonsfield* v. *Perkins,* 2 *Greenl.* 411.

*Kent,* for the defendants, said, that the first question was not raised at the trial, and that it was well understood by the jury, that if the pauper had his home at *Brighton* on the twenty-first of *March,* he had a settlement there.

He contended, that the instruction on the second point was right; and cited *Turner* v. *Buckfield,* 3 *Greenl.* 229; *Boothbay* v. *Wiscasset, ib.* 354; *Knox* v. *Waldoborough, ib.* 455; *Richmond* v. *Vassalborough,* 5 *Greenl.* 396; *Waterborough* v. *Newfield,* 8 *Greenl.* 203.

The opinion of the Court, after a continuance for advisement, was drawn up by

Weston C. J. — The authorities cited for the defendants, show that a domicil once established, continues until a new one is acquired. It is not then at all times true, that a party has his home where his domicil is, although it may be true, that he can have no home where it is not. If he abandons his former residence, with an intention not to return, but to fix his home elsewhere, while in the transit to his new, and it may be distant, destination, we are of opinion, that whatever may be said of his domicil, his home has ceased at his former residence, within the meaning of the statute, for the support and relief of the poor.

That which was his home, no longer remains such, after he has finally left it. The words of the statute, in reference to the twenty-first of *March,* 1821, the time in question, are, that the pauper " shall be deemed to have a settlement in the town, where he then dwells, and has his home." If on the day before, he had left the town, where he before lived, with an intention not to return, we do not think he could be said to dwell and have his home there on that day, although he may not have found a home elsewhere, or may not have reached that, to which it was his intention to repair. Home and domicil may, and generally do, mean the same thing; but a home may be relinquished and abandoned, while the domicil of the party, upon which many civil rights and duties depend, may in legal

contemplation remain.   Upon this point, the jury were, in our opinion, properly instructed.   The Judge, who presided at the trial, by settlement and home, undoubtedly meant the same thing.   Where the home of the pauper was on that day, there the statute fixed his settlement; and this question was left very fairly to the jury.

*Exceptions overruled.*